UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| COLIN BEICHER,<br>    Plaintiff, | )<br>)<br>) |
| v. | )  Civil Action No. 3:10-cv-1002<br>)  Judge Wiseman/Brown<br>) |
| MICHAEL ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>) |

To: The Honorable Thomas J. Wiseman, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB), as provided under Title II and Title XVI of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Record and Defendant's Response. (Docket Entries 12, 14). Plaintiff has also filed a Reply. (Docket Entry 15). The Magistrate Judge has also reviewed the administrative record (hereinafter "Tr."). (Docket Entry 10). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

## I. INTRODUCTION

Plaintiff applied for DIB on July 2, 2008 and for SSI on January 12, 2009, with an alleged disability onset date of April 10, 2007. (Tr. 13). He later amended his alleged onset date to July 1, 2008, at his hearing before the ALJ. (Tr. 13). Plaintiff's claim was denied initially and upon

1

reconsideration on March 6, 2009. (Tr. 13). Plaintiff requested a hearing before an ALJ, which was held on September 24, 2009, before ALJ Donald Garrison. (Tr. 278-304). On December 23, 2009, the ALJ issued an unfavorable decision. (Tr. 10-20).

In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since April 10, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: human immunodeficiency virus (HIV); adjustment disorder; and attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 20 CFR 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional climbing, balancing, stooping, crouching, kneeling, and crawling; able to understand, remember, and carry out short and simple instructions and make judgments on simple work-related decisions; no contact with the public; no production rate pace work; and no work requiring changes in work procedures/requirements.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 13, 1977 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job

            skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 10, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.926(g)).

(Tr. 15-20).

The Appeals Council denied Plaintiff's request for review on August 27, 2010. (Tr. 6-8). This action was timely filed on October 22, 2010. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff was born on July 13, 1977, making him 29 years old on his original alleged onset date of April 10, 2007. (Tr. 63). Plaintiff is a high school graduate. (Tr. 285). He has past work history as a plant care worker, computer operator, and customer services representative. (Tr. 281-85).

Plaintiff first sought care at Comprehensive Care Center on October 11, 2007. (Tr. 193). He was diagnosed with HIV in June 2007 by Nashville Cares. *Id*. At his intake, Plaintiff stated he was feeling good and "appeared to be in good health." *Id*. Plaintiff was not prescribed medication at his first appointment, on October 15, 2007. (Tr. 191).

Plaintiff was prescribed Atripla after an appointment on December 10, 2007. (Tr. 187-88). On January 21, 2008, his provider indicated he was doing well on Atripla and was "working and enjoying that." (Tr. 185). On April 7, 2008, Plaintiff reported to his provider that he jogs every other day and walks for an hour every day. (Tr. 184). On August 11, 2008, Plaintiff reported appetite loss, chills, fatigue, fever, night sweats, diarrhea, and anxiety. (Tr. 179-80). He

3

stated he ran out of his HIV medication on June 27, 2008 and had not taken any since. (Tr. 179). Dr. Stephen Raffanti prescribed Bactrim, an antibiotic, and stated he believed Plaintiff's complaints were due to poor HIV control. (Tr. 181). At a follow-up appointment on August 25, 2008, Plaintiff noted he was feeling better with regard to his sleep and diarrhea. (Tr. 172). He complained of a rash, and Dr. Sydney Hester prescribed Bactrim. (Tr. 172-73).

On a Disability Report form dated September 23, 2008, Plaintiff stated he is unable to work due to AIDS, depression, insomnia, fatigue, mood imbalance, nausea, and muscle spasms. (Tr. 68). He stated that he has problems hearing, concentrating, and remembering. (Tr. 68). He worked for two days in February 2008 as a school bus driver trainee. (Tr. 69).

On October 7, 2008, Plaintiff completed a fatigue questionnaire. (Tr. 90-91). He stated that he sleeps approximately twelve hours at night and takes two naps during the day. (Tr. 90). Showering and dressing take all his energy, necessitating a rest for approximately thirty minutes before putting on his shoes. *Id*. He cares for his small dog. *Id*. He goes to the grocery store once every two weeks, with his neighbor's help, and reheats prepared foods for his meals. *Id*. He sweeps his floors and sorts and folds his laundry. *Id*. He was let go from his last job because he could not make it to the training classes on time. (Tr. 91).

Plaintiff also completed a Function Report on the same date. (Tr. 92-99). He indicated his illnesses effect walking, stair climbing, memory, completing tasks, concentration, and following instructions. (Tr. 97). He can walk about 200 feet before needing to rest for 15 to 20 minutes. *Id*. He can follow simple spoken instructions. *Id*. He stated he "get[s] along great with people" and handles stress and changes in routine very well. (Tr. 98).

On October 20, 2008, Plaintiff stated he had lost his job and had lost his appetite, felt

4

depressed, and had insomnia as a result. (Tr. 163). He also feared interacting in large groups due to the possibility of illness. (Tr. 164). Dr. Raffanti prescribed Zoloft and set up an appointment with Scott, presumably a therapist. (Tr. 165). At a follow-up appointment on November 3, 2008, Plaintiff stated he felt "more mellow" but also more "restless" after taking Zoloft. (Tr. 160). Dr. Raffanti continued Zoloft to see if more time on the medication would further lessen Plaintiff's depression symptoms. (Tr. 162). He was set to meet with Scott in late November. *Id*.

Rebecca P. Joslin, Ed.D., completed a Psychiatric Review of Plaintiff's record on October 29, 2008. (Tr. 129-46). She noted Plaintiff was diagnosed with anxiety disorder. (Tr. 134). She believed Plaintiff had mild limitation in activities of daily living; no difficulties in maintaining social function; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 139). She noted Plaintiff reported taking no psychiatric medications. (Tr. 141). She believed his allegations were credible, but there were no mental health records. *Id*.

In her Residual Functional Capacity Assessment ("RFC"), Dr. Joslin believed Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 143-44). She did not believe he was otherwise limited. *Id*.

Plaintiff submitted an update dated November 6, 2008, indicating he had been prescribed Zoloft for his depression and been referred to Dr. Cummings at Comprehensive Care Center for therapy. (Tr. 100). He submitted this report by telephone. *Id*.

5

Dr. Molly S. Chatterjee, M.D., completed a physical RFC on November 11, 2008. (Tr. 147-54). She opined Plaintiff could occasionally lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, could stand and/or walk for a total of about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, and had no limitations on pushing or pulling. (Tr. 148). She did not believe he was otherwise limited in physical capacity. (Tr. 149-51). She noted Plaintiff's allegations were partially credible, as Plaintiff was able to care for his dog and perform activities of daily living. (Tr. 154). Plaintiff was doing well on medication for his HIV and insomnia. *Id*.

Plaintiff saw Dr. Reena Camoens for the first time on November 25, 2008. (Tr. 159). Dr. Camoens noted Plaintiff had a phobia of becoming sick and had adjustment disorder with mixed anxiety and depressed mood. (Tr. 159). She prescribed Zoloft and Seroquel. *Id*.

Plaintiff saw Dr. Hester again on January 12, 2009. (Tr. 156-58). He complained of a small pustule on his arm and head which resolved spontaneously. (Tr. 156). He stated he felt "overmedicated" on Zoloft and Seroquel. *Id*. Dr. Hester advised Plaintiff to seek treatment if the lesion returned. (Tr. 158). His blood tests on this date showed less than 48 copies/mL of HIV-1 RNA; in other words, the amount of HIV-1 RNA was less than the reportable range for the test. (Tr. 196). Plaintiff's chart reflects a peak of 32,300 copies in April 2008, with steadily declining levels since that date. (Tr. 197).

Dr. Hester completed a Medical Report on Plaintiff's behalf on February 15, 2009. (Tr. 228-32). She noted Plaintiff had suffered from chronic fatigue for greater than six months and had suffered from depression and adjustment disorder that required medication since November 2008. (Tr. 230). She stated Plaintiff had lost his job as a result of his lack of concentration. *Id*.

6

She believed Plaintiff had marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id*.

Plaintiff was treated at the Comprehensive Care Center for "pimples" on February 16, 2009. (Tr. 248). The lesions were noted to be consistent with folliculitis, and doxycycline hyclate was prescribed. (Tr. 248-49). Plaintiff saw Dr. Hester again on April 20, 2009. (Tr. 244). Dr. Hester noted Plaintiff was "doing well," though he complained of constant itching on his arms and thighs. *Id*. Dr. Hester believed this was possibly a side effect of Seroquel. (Tr. 245).

Plaintiff submitted a prescription from Dr. Michael Bryant at McKenzie Medical Center. (Tr. 255). The prescription was for three medications, including Diflucan, and was dated September 14, 2009. *Id*. This was presumably related to Dr. Bryant's treatment of Plaintiff for Morgellons Disease.

Dr. Camoens submitted a Medical Source Statement dated September 15, 2009. (Tr. 256-58). She stated Plaintiff has moderate limitations in understanding, remembering, and carrying out simple instructions. (Tr. 256). She believed Plaintiff has marked limitations in the ability to make judgments on simple work-related decisions, understanding and remembering complex instructions, carrying out complex instructions, and the ability to make judgments on complex work-related decisions. *Id*. She noted Plaintiff has ADHD, "a lot of phobias," mood problems, and obsessive-compulsive disorder. *Id*. She noted Plaintiff had marked restrictions in interacting appropriately with the public, with supervisors, and with co-workers, as well as in responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 257). She indicated Plaintiff has fatigue, a lack of motivation, difficulty focusing and concentrating, and an

7

extreme difficulty in being around people. *Id*. Dr. Camoens also stated Plaintiff has Morgellons Disease. *Id*. She noted the limitations were first present on November 25, 2008. *Id*.

On November 12, 2009, James McFerrin, M.D., a disability consultant, examined Plaintiff. (Tr. 259-64). In his Medical Source Statement, Dr. McFerrin noted Plaintiff had no limitations in understanding and remembering simple instructions but mild limitations in carrying out simple instructions and making judgments on simple work-related decisions. (Tr. 362). He believed Plaintiff had moderate limitations in the ability to make judgments on complex work-related decisions and marked limitations in understanding, remembering, and carrying out complex instructions. *Id*. He noted Plaintiff was diagnosed with ADHD in childhood, "which affects memory, concentration and attention to details or follow through." *Id*. Dr. McFerrin believed Plaintiff could interact appropriately with the public, supervisors, and co-workers, though he had mild restrictions in that area. (Tr. 263). He believed Plaintiff had moderate restrictions in responding appropriately to the usual work situations and to changes in a routine work setting. *Id*. He noted Plaintiff has a history of phobias related to chronic illness. *Id*. He also noted Plaintiff's HIV infection would limit some job opportunities. *Id*.

At his hearing, Plaintiff testified that he graduated from high school but has no special job training or licenses. (Tr. 285-86). He lives by himself in an apartment for which he gets Section 8 housing assistance. (Tr. 286). He also receives food stamps. *Id*. He was diagnosed with HIV in August 2007. (Tr. 287). Plaintiff has some health coverage that pays for his HIV medication. (Tr. 286).

Plaintiff stated he has not tried to work since July 2008. (Tr. 286). He last worked as a plant care worker, but he was missing too much work and was unable to complete his work in a

timely manner because he was sick. (Tr. 286-87).

After being diagnosed with HIV, Plaintiff did not immediately start taking medication. (Tr. 288). Plaintiff's doctors began prescribing medication in early 2008 because his CD4+ T cell counts fell below 200. *Id*. At the time of his hearing, Plaintiff was taking his HIV medication and an antibiotic. *Id*.

As a result of his HIV, Plaintiff has constant nausea and headaches. (Tr. 289). He suffers from insomnia and takes medications to help him sleep. *Id*. He also suffers from anxiety and phobias and is scared to leave the house for fear of getting sick. *Id*. Plaintiff's physician, Dr. Hester, prescribed Atripla and Bactrim for the HIV. (Tr. 290). The medications cause side effects, including nightmares and nausea. (Tr. 291). Plaintiff has not been hospitalized since his diagnosis. (Tr. 294).

Plaintiff stated he visited Dr. Bryant at McKensey Medical Center on September 14, 2009. (Tr. 297). He is a primary care physician who treated Plaintiff for Morgellon's Disease. *Id*. Plaintiff went to Dr. Bryant because he was the first doctor Plaintiff identified who would treat Morgellon's Disease. *Id*. Plaintiff has sores and there are "like fibers that are under the skin that will come out through the sores." *Id*. He has a constant feeling that something is crawling on his skin, and he gets confused easily. (Tr. 300). A doctor at Comprehensive Services had diagnosed his condition as folliculitis and prescribed medication. (Tr. 298). Dr. Bryant prescribed an additional antibiotic, anti-fungal, and anti-parasitic medications. (Tr. 299). Dr. Bryant examined Plaintiff's sores and observed an oil-like film over the skin, which led him to diagnose Morgellon's Disease. *Id*. Plaintiff had found information about the disease on the internet prior to consulting with Dr. Bryant and was aware that some doctors did not

9

acknowledge Morgellon's Disease as a legitimate condition. *Id.* Plaintiff's attorney indicated he would submit the McKensey Medical records after the hearing. (Tr. 283, 304).[1]

Plaintiff received mental therapy beginning around September 2008. (Tr. 290, 301). Dr. Hester referred him to Dr. Camoens when she believed Plaintiff needed counseling services. (Tr. 301). Dr. Camoens provides some therapy and indicated she would refer Plaintiff to a counselor. (Tr. 292). She prescribed Zoloft, Seroquel, and Ritalin. (Tr. 290). Plaintiff had been diagnosed with ADHD as a child. (Tr. 290-91). Plaintiff stated the medication does help with his anxiety, but he is "a little wired" after taking the medication. (Tr. 291). He first had anxiety and phobia problems after his numbers fell below 200 in 2008. (Tr. 293). He became afraid of getting sick and has remained that way, even as his numbers have improved. (Tr. 293-94).

Plaintiff is afraid to leave his house and sometimes has panic attacks. (Tr. 291). It takes him two to three hours to get ready to leave his house. *Id.* He believes he is making some progress on his mental health issues with treatment. (Tr. 291-92).

Plaintiff has a driver's license but does not drive. (Tr. 292). He is able to do some household chores, but most of his meals are reheated frozen dinners, and he uses paper plates to avoid washing dishes. *Id.* He avoids public places at all costs and does not visit others. *Id.* Someone from a volunteer organization does his grocery shopping, because he is afraid of going to the grocery store and has ended up sick in the past as a result of shopping. (Tr. 293).

After questioning the Plaintiff on a few of his previous jobs, Vocational Expert ("VE") Michelle McBroom-Weiss testified that Plaintiff has past relevant work as a customer services representative, plant care worker, manager of fast food workers, and computer operator. (Tr.

---

[1] Plaintiff apparently failed to submit any evidence related to this issue after the hearing.

281-83, 285). She stated that Plaintiff has transferable skills from sedentary to other sedentary jobs and from light jobs to sedentary jobs. (Tr. 285).

The ALJ asked the VE if a person of Plaintiff's age, education and work experience, able to perform light work with occasional postural activities is able to perform any of Plaintiff's past relevant work with the following additional restrictions: able to understand, remember and carry out only short and simple instructions and make judgments only on simple work-related decisions; no interaction with the public; and no production rate paced quota jobs or jobs with change in work procedures or requirements but instead simple routine tasks. (Tr. 301). The VE stated the individual would not be able to do any of Plaintiff's past work.[2] (Tr. 302-03). She stated the individual could perform unskilled, light work as a light laundry folder (800 jobs in Tennessee, 40,000 in the United States), light housekeeper (7,300 in Tennessee, 375,000 in the United States), or clothing ticketer (4,900 in Tennessee, 215,000 in the United States). (Tr. 302). Additionally, the individual could perform sedentary work as a sedentary security systems monitor (200 in Tennessee, 13,000 in the United States) and as a sedentary hand trimmer (400 in Tennessee, 13,000 in the United States). (Tr. 302).

The ALJ asked the VE whether a person of Plaintiff's age, education, and work experience could perform any work if Dr. Camoens's medical source statement were fully accepted. (Tr. 302). The VE stated that the individual would not be able to perform any work given those restrictions. *Id*. Moreover, if Plaintiff's testimony were fully credible, the VE believed he would not be able to perform the jobs she had identified. *Id*.

---

[2] The VE first stated this individual would be able to perform Plaintiff's past work as a plant worker, but, upon cross-examination, admitted she was mistaken, as plant worker is classified as medium work. (Tr. 302-03).

## III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

Plaintiff alleges seven errors committed by the ALJ in his decision. First, the ALJ erred by not finding that Plaintiff meets the requirements of Listing 14.08. Second, the ALJ erred by finding that Plaintiff has the RFC to perform light work. Third, the ALJ erred by failing to consider all the evidence before him. Fourth, the ALJ erred by not giving proper weight to the opinions of the treating physicians in accordance with 20 C.F.R. §§ 404.1527 and 416.927. Fifth, the ALJ committed reversible error in failing to comply with Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529 and 416.926 in evaluating the claimant's subjective limitations. Sixth, the ALJ erred in failing to correctly evaluate Plaintiff's mental conditions in accordance with 20 C.F.R. §§ 404.1520a, 404.1545(c), 419.920a, and 416.945(c). Seventh, the ALJ erred in relying on the testimony of the vocational expert.

Plaintiff's primary arguments are that the ALJ improperly weighed the opinions of his treating physicians, Dr. Hester and Dr. Camoens; that the ALJ did not properly weigh Plaintiff's credibility; and that the ALJ's decision is not supported by substantial evidence. The Magistrate Judge has therefore addressed these three arguments before addressing any of Plaintiff's specific errors.

A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.  Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

C. The ALJ Properly Considered and Weighed the Evidence

Plaintiff argues that the ALJ failed to consider the evidence that Plaintiff meets the requirements of Listing 14.08 and that the ALJ improperly weighed the evidence provided by Plaintiff's treating physicians, Dr. Hester and Dr. Camoens. For the reasons discussed below, the Magistrate Judge believes the ALJ's consideration and weighing of the evidence were proper.

An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(i)-(ii). However, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently

14

supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994).

While the ALJ is not bound by the opinions of Plaintiff's treating physicians, the ALJ is required to set forth some sufficient basis for rejecting these opinions. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). In discrediting the opinion of a treating source, the ALJ must consider the nature and extent of the treatment relationship, the length of the treatment relationship and the frequency of examinations, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the specialization of the treating source, and any other factors which tend to support or to contradict the opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

In this case, the ALJ had substantial evidence for giving greater weight to the opinion of the examining consultant, Dr. McFerrin. Notes from Plaintiff's treatment at Comprehensive Care Center indicate that he suffers from nausea and fatigue related to HIV, but Plaintiff is also described as doing well or feeling better, and his HIV was well-controlled with medication. (Tr. 172, 196, 244). Plaintiff was able to complete household chores and care for his dog, and he stated his mental problems were being helped through medication. (Tr. 17-18, 160). The ALJ also determined that Plaintiff's allegations were not entirely credible. (Tr. 17-18). The Magistrate Judge therefore believes the ALJ adequately set forth his basis for rejecting the opinions of Dr. Camoens and Dr. Hester.

Plaintiff also argues that he meets the requirements of Listing 14.08 because he suffers from HIV and pneumocystis carinii pneumonia, HIV and conditions of the skin with extensive fungating or ulcerting lesions not responding to treatment, and repeated manifestations of HIV

infection.  *See* Listings 14.08B7, 14.08F, and 14.08K3.  To meet a listed impairment, Plaintiff must show not only that a listed impairment is present but also that it has lasted or is expected to last for at least twelve months or result in death.  *Listenbee v. Secretary of H.H.S.*, 846 F.2d 345, 350 (6th Cir. 1988).

As the Commissioner points out in his brief, however, the record shows no indication that Plaintiff was ever diagnosed with any of these complications from HIV or that any complication was expected to last for twelve months.  Plaintiff's treatment notes from the Comprehensive Care Center indicate Plaintiff had a risk of pneumocystis carinii pneumonia, but Plaintiff was never diagnosed with this infection.  (Tr. 158, 170, 174, 245).  While Plaintiff was diagnosed with tinea cruris on August 25, 2008, his rash improved after two weeks of treatment, and he was told to discontinue the medication.  (Tr. 171, 174).  In her medical report detailing Plaintiff's HIV, Dr. Hester also declined to check any opportunistic and indicator diseases, including pneumocystis carinii pneumonia and conditions of the skin or mucous membranes.  (Tr. 228-29).

Plaintiff also argues that his diagnosis of Morgellons Disease meets Listing 14.08F.  While Morgellons Disease might, in fact, meet the requirements of Listing 14.08F, Plaintiff has offered no evidence of his diagnosis.[4]  In her Medical Source Statement, Dr. Camoens, a psychiatrist, stated Plaintiff has Morgellons Disease, and Plaintiff submitted a prescription from Dr. Michael Bryant, the physician who treats Plaintiff for the disease, for three medications.  (Tr. 255, 257).  There is no evidence in the record supporting Plaintiff's alleged diagnosis of Morgellons Disease, and Plaintiff has simply not carried his burden on this issue.

---

[4] While the ALJ had no need to address this in his opinion, the Magistrate Judge notes that Morgellons Disease is "not widely recognized as a medical diagnosis." http://www.mayoclinic.com/health/morgellons-disease/sn00043

Dr. Hester's only noted manifestations of HIV were fatigue and depression. (Tr. 230). The ALJ found that Plaintiff did not have marked limitations in activities of daily living, maintaining social functioning, or in completing tasks in a timely manner, as required to meet Listing 14.08K. (Tr. 15-18). As discussed in detail above, the ALJ properly discounted Dr. Camoens's opinion that Plaintiff had marked limitations in maintaining social functioning and in completing tasks in a timely manner. (Tr. 18, 256-57). The ALJ also properly discounted Dr. Hester's opinion that Plaintiff had marked limitations in concentration, persistence and pace. (Tr. 18, 230). While the ALJ should have specifically discussed why Plaintiff does not meet the requirements of Listing 14.08, the Magistrate Judge believes he had substantial evidence for this finding.

Plaintiff argues that, alternatively, he should be considered to medically equal Listing 14.08. In order to medically equal a listing, Plaintiff must show "an impairment or combination of impairments [that] are at least equal in severity and duration to the listed impairments most like the claimed impairment." *Dorton v. Heckler*, 789 F.2d 363, 366 (1986). Plaintiff has, in essence, restated his arguments that the ALJ should have weighed the opinions of Dr. Camoens and Dr. Hester differently. The Magistrate Judge believes those arguments are unavailing. The ALJ properly weighed the evidence and found Plaintiff did not meet or medically equal a listed impairment.

D.   The ALJ Properly Evaluated Plaintiff's Credibility

An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor

17

and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997) (citing 42 U.S.C. § 423 and 20 C.F.R. 404.1529(a)). Like any other factual finding, however, an ALJ's adverse credibility finding must be supported by substantial evidence. *Doud v. Commissioner*, 314 F. Supp. 2d 671, 678-79 (E.D. Mich. 2003). Here, the ALJ discounted Plaintiff's credibility and found he was able to perform light work. The ALJ noted that Plaintiff is able to care for himself and his dog, go to the grocery store, and do routine household chores. (Tr. 17, 90-91). Plaintiff also indicated on his Function Report that he "get[s] along great with people" and handles stress and changes in routine very well. (Tr. 98). The Magistrate Judge therefore believes the ALJ's decision should be deferred to in this instance.

E.    The ALJ's Decision Is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred by finding he has the residual capacity for light work and by failing to adequately evaluate his mental complaints. To some degree, this argument is related to the previous two.

Residual functional capacity is defined as what a claimant can do on a sustained, regular, and continuing basis. *See Cohen v. Secretary of H.H.S.*, 964 F.2d 524 (6th Cir. 1992). Plaintiff primarily disagrees with the ALJ's determination that Plaintiff's complaints of nausea and fatigue were "sporadic" and had "not been made consistently for any length of time." While Plaintiff complained of nausea and fatigue at several appointments, there was noted improvement in his condition. (Tr. 172, 196, 244). Plaintiff also objects to the weight given to Plaintiff's treating physicians' opinions. For the reasons discussed previously, the Magistrate Judge disagrees with Plaintiff's argument on that point. In the undersigned's opinion, the ALJ had substantial evidence for concluding Plaintiff has the residual capacity for light work.

18

With regard to Plaintiff's mental complaints, Plaintiff objects to the ALJ's rejection of the opinions of Plaintiff's treating physicians, the ALJ's credibility assessment of Plaintiff, and the ALJ's hypothetical to the VE. Generally, when a claimant alleges disabling mental impairment, an ALJ is required to evaluate first whether the claimant has a "medically determinable mental impairment" and then to rate the "degree of functional limitation resulting from the impairment." 20 C.F.R. § 404.1520a. The ALJ must evaluate the so-called "A" criteria, consisting of the "symptoms, signs, and laboratory findings" of the claimant's alleged medically determinable mental impairment. *Id.* The ALJ must also evaluate the "B" criteria, which rate the claimant's degree of functional limitation and consist of four functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* The ALJ's application of these criteria must be documented in his decision. *Id.*

Here, the ALJ clearly evaluated the A and B criteria. (Tr. 16-17). In addition, the Magistrate Judge believes the ALJ's evaluations of the evidence and of Plaintiff's credibility were supported by substantial evidence, as discussed above. Plaintiff's argument regarding the VE's testimony is similarly a rehashing of his disagreement with the ALJ's weighing of the evidence. The ALJ posed hypothetical questions to the VE that encompassed the final RFC, the opinions of Plaintiff's treating physicians, and Plaintiff's testimony. (Tr. 301-03). That Plaintiff would not be able to work if Dr. Camoens's or Plaintiff's testimony was fully accepted does not impact the validity of the VE's testimony; the ALJ properly discounted those sources of information in deciding the RFC, and the VE testified regarding the hypothetical employment of a person with Plaintiff's determined RFC. *Id*. The Magistrate Judge therefore believes the ALJ's decision is supported by substantial evidence.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 10th day of May, 2011.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge